**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **COURTNEY M. SMITH,** | ) | |
| *AIS # 00181090*, | ) | |
|     **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 1:24-00038-TFM-N** |
| | ) | |
| **DAVID JONES,** *Senior Agent*, | ) | |
| *et al.,* | ) | |
|     **Defendants.** | ) | |

<u>**REPORT AND RECOMMENDATION**</u>

This civil action is before the Court on the "Motion to Dismiss" filed by all Defendants on July 23, 2025 (Doc# 45). The assigned District Judge has referred said motion to the undersigned Magistrate Judge for appropriate action under 28 U.S.C. § 636(a)-(b), Federal Rule of Civil Procedure 72, and S.D. Ala. GenLR 72(a). *See* S.D. Ala. GenLR 72(b); (7/24/2025 electronic reference notation); (Doc# 3). The Plaintiff filed no response to said motion by the Court's briefing deadline, and the motion is now under submission. (*See* Doc# 47). Upon due consideration, the undersigned finds that oral argument on the present motion is unnecessary, and that it is due to be **GRANTED in part** and **DENIED in part**, with alternative relief to be granted in part, as set out.

## I.  *Legal Standards*

The present motion moves for dismissal in part under Federal Rule of Civil Procedure 12(b)(1), for lack of subject-matter jurisdiction, and in part under Rule 12(b)(6), for failure to state a claim upon which relief can be granted.

In deciding a motion to dismiss under Rule 12(b)(6), generally "the 'scope of the review must be limited to the four corners of the complaint.' " *Speaker v. U.S. Dep't of Health & Hum. Servs. Centers for Disease Control & Prevention*, 623 F.3d 1371, 1379 (11th Cir. 2010) (quoting *St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002)). The Court must "accept the allegations in the complaint as true and construe them in the light most favorable to the plaintiff." *Duty Free Ams., Inc. v. Estee Lauder Companies, Inc.*, 797 F.3d 1248, 1262 (11th Cir. 2015).

> Attacks on subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) come in two forms. 'Facial attacks' on the complaint require the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion. 'Factual attacks,' on the other hand, challenge the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered.

*Lawrence v. Dunbar*, 919 F.2d 1525, 1528–29 (11th Cir. 1990) (per curiam) (citation and quotations omitted). Here, the Rule 12(b)(1) motion is a "facial attack" on the complaint, as it does not rely on matters outside of the complaint. Therefore, Smith is "afforded safeguards similar to those provided in opposing a Rule 12(b)(6) motion— the court must consider the allegations of the complaint to be true." *Id.* at 1529.

## II.    *Well-Pleaded Allegations & Claims*

Per the well-pleaded allegations in Smith's complaint (Doc# 1), on or about December 2, 2018, when Smith was temporarily living in A Unit of ADOC's William C. Holman Correctional Facility in Atmore, Alabama, another inmate in that unit, Vaquerro K. Armstrong, was killed from numerous stab wounds inflicted by other

inmates, while Smith "was sitting on another inmate's bed." (*Id.*, PageID.8). Shortly after the incident, Defendants Senior Agent David Jones and Agent David Martinez interviewed corrections officer Darren Wright, who claimed to have witnessed four inmates stabbing Armstrong and identified Smith as one of the four. (*Id.*, PageID.8-9). The next day, Jones and another agent interviewed Smith, who denied stabbing Armstrong, though Jones informed Smith "that he was positively identified as one of the four (4) inmates who had stabbed inmate Armstrong to death." (*Id.*, PageID.9). Agent Jones then went to the Escambia County (Alabama) courthouse that same day, " 'without' any evidence other than Darren Wright's statement," to sign a warrant for Smith's arrest for murder. (*Id.*). Agents Jones and Martinez served Smith with the warrant the following day. (*Id.*).

On or about December 26, 2018, a prison disciplinary hearing was held to determine Smith's involvement in Armstrong's death. (*Id.*). Larry Wayne Garrett, another prison inmate, testified that "Smith was sitting on his (Garretts' [sic]) bed" at the time of the killing, and Brandon McKenzie, a prison lieutenant, testified that his "intel" said Smith wasn't involved. (*Id.*). The hearing officer also contacted Officer Wright by telephone, who testified "that he didn't actually witness [Smith] stabbing…Armstrong, but [Smith] 'did appear' to have a knife." (*Id.*). The hearing officer ultimately found that Smith wasn't involved in the incident. (*Id.*).

On or about March 13, 2019, Agent Jones completed an "Investigative Report" regarding Armstrong's murder for ADOC's Investigative and Intelligence Division ("I&I"), but "knowingly and deliberately" omitted from the report "that the only eye

3

witness, (Darren Wright) who allegedly claimed that he (Darren Wright) saw []Smith[] stabbing…Armstrong to death had recanted his statement at the December 26, 2018 disciplinary hearing." (*Id.*). Defendants I&I Supervisor Leroy A. Dale and I&I Assistant Director F. Sides both reviewed (and seemingly approved) Agent Jones's report, despite knowing or overlooking the fact that the report omitted Wright's changed account of the incident. (*Id.*, PageID.9-10). Defendant Terry Raybon, chief warden of Holman, also allegedly withheld Wright's change in story from the Escambia County District Attorney's Office. (*Id.*, PageID.10).

In or around April or May of 2019, the Escambia County District Attorney indicted Smith for capital murder of Armstrong, "based off the inaccurate misinformation Senior Agent David Jones submitted…" (*Id.*). Officer Wright's changed statement was never provided as part of the State's discovery provided to Smith's counsel, and on or about September 2023, the capital murder charge was dismissed/*nolle prossed* on the State's motion. (*Id.*).

Based on the alleged facts, Smith asserts claims "under 42 U.S.C. Section 1983" for "8th & 14th Amendment right violations." (*Id.*, PageID.8). The gravamen of Smith's claims in this action is that had the Defendants "presented the evidence that Officer Darren Wright had recanted his statement, there's a strong probability, that the District Attorney of Escambia County, Alabama would not have submitted [Smith's] case to the grand jury, because there was no evidence against [Smith] showing he had killed…Armstrong." (*Id.*, PageID.10). Based on these allegations, and

4

liberally construing Smith's complaint, which was filed *pro se*,[1] the undersigned construes Smith's complaint as asserting § 1983 claims against the Defendants for malicious prosecution in violation of the Fourth Amendment of the U.S. Constitution, and for intentionally withholding exculpatory and/or impeachment evidence from the prosecutor in violation of the due process clause of the Fourteenth Amendment. *See McMillian v. Johnson*, 88 F.3d 1554, 1569 (11th Cir.) ("Our case law clearly established that an accused's due process rights are violated when the police conceal exculpatory or impeachment evidence."), *opinion amended as to different issue on reh'g*, 101 F.3d 1363 (11th Cir. 1996); *Green v. Thomas*, 129 F.4th 877, 884–85 (5th Cir. 2025) ("We have clearly established the [Fourteenth Amendent] right to be free from officers' witness interference and concealment of exculpatory evidence which results in unlawful arrest, detention, or conviction.").

## III. *Analysis*

### a. **Immunity for Official Capacity Claims**[2]

The Defendants first argue that they are immune from suit for monetary damages under the Eleventh Amendment to the United States Constitution to the extent Smith asserts § 1983 claims against them in their official capacities. The undersigned agrees.

---

[1] *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) ("A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers…" (quotations and citation omitted)).

[2] The undersigned addresses the Defendants' arguments in a different order than how they were raised in the present motion.

"[O]fficial capacity suits represent 'only another way of pleading an action against an entity of which an officer is an agent,' and a victory against a named individual in an official capacity suit is 'a victory against the entity that employs him.'" *Hobbs v. Roberts*, 999 F.2d 1526, 1530 (11th Cir. 1993) (per curiam) (quoting *Kentucky v. Graham*, 473 U.S. 159, 167-68, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985)).

> The Eleventh Amendment provides sovereign immunity to the states to protect them from suit in federal court without their consent. *Manders v. Lee*, 338 F.3d 1304, 1308 (11th Cir. 2003). Sovereign immunity has also been extended to state officials, acting in their official capacity, where an agency or individual may "be treated as an arm of the State partaking of the Eleventh Amendment Immunity." *Mt. Healthy City Sch. Dist. Bd. Of Educ. v. Doyle*, 429 U.S. 274, 280, 97 S. Ct. 568, 50 L. Ed. 2d 471 (1977).
>
> A state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity or Congress has abrogated the state's immunity. *See Lancaster v. Monroe Cty.*, 116 F.3d 1419, 1429 (1997) *abrogated on other grounds by Lake v. Skelton*, 840 F.3d 1334, 2016 WL 6518522 (11th Cir. November 3, 2016).

*Melton v. Abston*, 841 F.3d 1207, 1233–34 (11th Cir. 2016) (per curiam). Generally, "a suit against state officials that is in fact a suit against a State is barred regardless of whether it seeks damages or injunctive relief." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 102, 104 S. Ct. 900, 79 L. Ed. 2d 67 (1984).

"Congress has not abrogated eleventh amendment immunity in section 1983 cases[, and t]he state of Alabama has not waived its immunity … Article 1, section 14 of the Alabama Constitution of 1901 expressly states that 'the State of Alabama shall never be made a defendant in any court of law or equity.'" *Carr v. City of Florence, Ala.*, 916 F.2d 1521, 1525 (11th Cir. 1990). "Consequently, Alabama state officials are

6

immune from claims brought against them in their <u>official</u> capacities" under § 1983. *Melton*, 841 F.3d at 1234. All Defendants are alleged to be agents of ADOC. Therefore, claims against the Defendants in their official capacity represent "only another way of pleading an action against" ADOC, and "the Supreme Court has held that a suit directly against the Alabama Department of Corrections is barred by the eleventh amendment." *Gramegna v. Johnson*, 846 F.2d 675, 677 (11th Cir. 1988) (citing *Alabama v. Pugh*, 438 U.S. 781, 782, 98 S. Ct. 3057, 57 L. Ed. 2d 1114 (1978) (per curiam)).

Accordingly, because the Defendants are immune from monetary damages in their official capacities under the Eleventh Amendment, Smith's § 1983 claims for monetary damages against the Defendants in their official capacity are due to be **DISMISSED without prejudice** under Rule 12(b)(1).[3]

### b. Whether the Complaint States a Claim for Malicious Prosecution

"[M]alicious prosecution [i]s a violation of the Fourth Amendment and…a viable constitutional tort under § 1983." *Blue v. Lopez*, 901 F.3d 1352, 1357 (11th Cir. 2018). "The gravamen of a malicious-prosecution claim is that a Fourth Amendment violation occurs 'when legal process itself goes wrong—when, for example, a judge's probable-cause determination is predicated solely on a police officer's false statements.' " *Aguirre v. Seminole Cnty.*, 158 F.4th 1276, 1301 (11th Cir. 2025) (quoting *Manuel v. City of Joliet*, 580 U.S. 357, 367, 137 S. Ct. 911, 197 L. Ed. 2d 312

---

[3] *See, e.g.*, *Seaborn v. State of Fla., Dep't of Corr.*, 143 F.3d 1405, 1407 (11th Cir. 1998) ("An assertion of Eleventh Amendment immunity essentially challenges a court's subject matter jurisdiction…").

(2017)). "Malicious prosecution therefore extends to seizures based on warrants or seizures following an arraignment, indictment, or probable-cause hearing. To succeed on a malicious-prosecution claim, then, a plaintiff must show that the legal process justifying the seizure was defective due to constitutional infirmities." *Id.* (citation omitted). "[T]o prove a Fourth Amendment malicious-prosecution claim in our Circuit, a plaintiff must establish four elements: (1) the plaintiff was seized under legal process; (2) the legal process justifying the plaintiff's seizure was constitutionally infirm; (3) the suit or proceeding terminated in the plaintiff's favor; and (4) the seizure would not otherwise be justified without legal process." *Gervin v. Florence*, 139 F.4th 1236, 1248 (11th Cir. 2025).

The Defendants first argue that Smith cannot show that his criminal proceedings terminated in his favor because, since the filing of his complaint, he has again been indicted for Armstrong's murder. (*See* Doc# 42-2). However, the Defendants have cited no authority to suggesting that Smith's second indictment nullifies his allegedly unlawful seizure pursuant to the *nolle prossed* indictment, and the undersigned is not persuaded that it does. After all, claims for malicious prosecution are designed to protect against unreasonable seizures in violation of the Fourth Amendment. Even if Smith's seizure under the second indictment is constitutional and he is ultimately found guilty of murdering Armstrong, Smith would still have suffered an "unreasonable seizure" if the process under which he was seized pursuant to the *nolle prossed* indictment was constitutionally infirm. Moreover, "[t]o demonstrate a favorable termination of a criminal prosecution for

purposes of the Fourth Amendment claim under § 1983 for malicious prosecution, a plaintiff need only show that his prosecution ended without a conviction[;]" he need not "also demonstrate that the prosecution ended with some affirmative indication of his innocence, such as an acquittal or a dismissal accompanied by a statement from the judge that the evidence was insufficient[.]" *Thompson v. Clark*, 596 U.S. 36, 39, 142 S. Ct. 1332, 212 L. Ed. 2d 382 (2022). As the first indictment was *nolled prossed*, the first prosecution terminated in Smith's favor.

The Defendants next argue that Smith has not shown that the warrant for Smith's arrest Agent Jones obtained shortly after Armstrong's murder was constitutionally infirm. However, as was previously mentioned, Smith's claims are not based on his seizure pursuant to the arrest warrant, but rather his seizure pursuant to the first indictment, which he asserts was constitutionally infirm because the Defendants "intentionally or recklessly made…omissions necessary to support the" indictment, by withholding evidence from the prosecution that Officer Wright had retracted his initial claim that he witnessed Smith stabbing Armstrong. *Williams v. Aguirre*, 965 F.3d 1147, 1165 (11th Cir. 2020). Because the Defendants' motion argues against the wrong "legal process," they have not shown entitlement to dismissal of Smith's malicious prosecution claims.[4]

---

[4] The Defendants' claims of entitlement to qualified immunity in the present motion are similarly infirm, as that discussion also focuses solely on whether "arguable" probable cause existed for Agent Jones's arrest warrant, rather than for the indictment.

9

### c. Standing to Sue Warden Raybon

The Defendants also argue that Smith has not demonstrated standing under Article III of the U.S. Constitution to sue Warden Raybon because he has not "show[n] a 'causal connection' between h[i]s injury and the challenged action of [Warden Raybon]—i.e., the injury must be 'fairly ... trace[able]' to the defendant's conduct, as opposed to the action of an absent third party." *Lewis v. Governor of Ala.*, 944 F.3d 1287, 1296 (11th Cir. 2019) (en banc) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992) (citation omitted)). Specifically, they argue:

> Smith makes a singular allegation against Raybon, that he "withheld the facts and evidence . . . from the District Attorney's Office of Escambia County." But Raybon, as a Correctional Warden, has no authority to bring a criminal charge or cause a criminal charge to be dropped. The allegation that Warden Raybon should've informed the DA of a statement made at a disciplinary hearing is simply too tenuous. Accordingly, Smith lacks standing to sue Warden Raybon, and any claims against Raybon are due to be dismissed.

(Doc# 45, PageID.169 (record citation omitted)).

This argument, however, misapprehends Smith's claims. Smith is not claiming that Warden Raybon, or indeed any of the Defendants, illegally brought a criminal prosecution against him. Rather, he is claiming that Warden Raybon, along with the other Defendants, either intentionally or recklessly omitted exculpatory evidence— Officer Wright's change in story—from the prosecution prior to the prosecution

10

bringing criminal charges, which, far from being "too tenuous," can support claims

for both malicious prosecution and due process violations, as explained above.[5]

### d. *Younger* Abstention

The Defendants also argue that the Court should abstain from exercising

jurisdiction over this case pursuant to the doctrine set out in *Younger v. Harris*, 401

U.S. 37, 91 S. Ct. 746, 27 L. Ed. 2d 669 (1971). The undersigned disagrees.

> "[O]nly the clearest of justifications merits abstention," and where *Younger*'s prerequisites are not satisfied, federal courts must exercise their jurisdiction. *Tokyo Gwinnett, LLC v. Gwinnett Cnty.*, 940 F.3d 1254, 1266–67 (11th Cir. 2019) (quotation marks omitted and alteration adopted) (quoting *Jackson-Platts v. Gen. Elec. Capital Corp.*, 727 F.3d 1127, 1140 (11th Cir. 2013)). However, when the prerequisites are met, "federal courts may and should withhold equitable relief to avoid interference with state proceedings." *31 Foster Child. V. Bush*, 329 F.3d 1255, 1274 (11th Cir. 2003) (emphasis added).
>
> …
>
> While the federal courts have a "virtually unflagging" obligation to hear the cases before them, the *Younger* doctrine presents a narrow exception. *Id.* (quoting *Colo. River Water Conservation Dist. V. United States*, 424 U.S. 800, 817, 96 S. Ct. 1236, 47 L. Ed. 2d 483 (1976)). *Younger* "requires a federal court to abstain where a plaintiff's federal claims could be adjudicated in a pending state judicial proceeding." *Deakins v. Monaghan*, 484 U.S. 193, 202, 108 S. Ct. 523, 98 L.Ed.2d 529 (1988). This reflects the norms of comity and respect inherent in "Our

---

[5] The Defendants' attempt to downplay Officer Wright's changed story as a mere "statement made at a disciplinary hearing" is concerning. Officer Wright was the only witness to claim to have actually seen Smith stab Armstrong during the murder. After Officer Wright retracted this claim at the disciplinary hearing, the evidence supporting Smith's involvement was far more circumstantial—his proximity to the murder, and Officer Wright's belief that Smith "appear[ed] to have a knife." Indeed, based on Officer Wright's changed story, along with other evidence presented, the presiding officer at prison disciplinary hearing found that Smith was not involved in Armstrong's murder.

Federalism." *Younger*, 401 U.S. at 44, 91 S. Ct. 746. But "Our Federalism" does not require "blind deference to 'States' Rights,' " *id.*, and not every state judicial proceeding requires federal abstention. The Supreme Court has recognized only three types of state proceedings where abstention is warranted: (1) "criminal prosecutions"; (2) "civil enforcement proceedings"; and (3) "civil proceedings involving certain orders that are uniquely in furtherance of the state courts' … judicial functions." *New Orleans Pub. Serv., Inc. v. Council of the City of New Orleans*, 491 U.S. 350, 367–68, 109 S. Ct. 2506, 105 L.Ed.2d 298 (1989) (NOPSI) (declining to extend *Younger* to state judicial review of legislative or ratemaking actions).

When a federal lawsuit overlaps with one of these types of state proceedings, and the federal court is asked to interfere in the state proceeding, the federal court must consider whether the three factors enumerated in *Middlesex County Ethics Committee v. Garden State Bar Association*, 457 U.S. 423, 432, 102 S. Ct. 2515, 73 L. Ed. 2d 116 (1982), are present: First, is the state proceeding "ongoing" at the same time as the federal one? Second, does the state proceeding implicate an "important state interest"? And third, does the state proceeding provide an "adequate opportunity" to raise the federal claim? *Tokyo Gwinnett*, 940 F.3d at 1268 (citing *Middlesex*, 457 U.S. at 432, 102 S. Ct. 2515).

When these three *Middlesex* factors are met, *Younger* abstention is warranted, and the federal court should abstain and allow the state proceeding to go forward.

*Leonard v. Ala. State Bd. of Pharmacy*, 61 F.4th 902, 907–08 (11th Cir. 2023) (alterations added).

*Younger* abstention is not warranted here because the relevant state proceeding, the criminal prosecution under the *nolle prossed* indictment, has not been pending since before this action was commenced, and the Defendants have failed to

12

explain how Smith's claims related to that proceeding will interfere with the second, ongoing state prosecution.[6]

### e.  *Heck v. Humphrey*

The Defendants also assert, in conclusory fashion, that Smith's claims are not "ripe" under *Heck v. Humphrey*, 512 U.S. 477, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994). Again, the undersigned disagrees.

> Under *Heck v. Humphrey*, 512 U.S. 477, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994), a state prisoner may not bring a claim for damages under 42 U.S.C. § 1983 "if a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction." *Id.* at 487, 114 S. Ct. 2364. As the Supreme Court noted, the most obvious example of an action barred by Heck is one in which the plaintiff actually "seek[s] damages directly attributable to conviction or confinement." *Id.* at 487 n.6, 114 S. Ct. 2364. But even when the plaintiff does not seek such damages, his suit may be barred if, for example, he must negate "an element of the offense of which he has been convicted" in order to prevail, *id.*, or if he contends that the statute under which he was convicted is unconstitutional.
>
> The Court explained in a footnote, however, that its holding would not necessarily preclude a Fourth Amendment claim of illegal search and seizure:

---

[6] Even if *Younger* abstention did apply, dismissal of this action in its entirety would be inappropriate. "If *Younger* abstention applies to a claim for monetary damages, the Supreme Court has concluded that a district court can only stay that claim if it cannot be redressed in the state proceeding, and it has no discretion to dismiss those claims." *Watson v. Fla. Jud. Qualifications Comm'n*, 618 F. App'x 487, 491 (11th Cir. 2015) (per curiam) (unpublished) (citing *Deakins v. Monaghan*, 484 U.S. 193, 202, 108 S. Ct. 523, 529, 98 L. Ed. 2d 529 (1988)). The Defendants have not explained how Smith could seek monetary damages in either his *nolle prossed* or pending state criminal prosecutions. Thus, Smith's claims for money damages would have to be stayed, rather than dismissed, if *Younger* did apply. *See id.* ("[T]he district court lacked discretion to dismiss Watson's claims for monetary damages under the *Younger* doctrine because they cannot be brought in the FJQC proceeding or the Florida Supreme Court's review of that proceeding.").

> For example, a suit for damages attributable to an allegedly unreasonable search may lie even if the challenged search produced evidence that was introduced in a state criminal trial resulting in the § 1983 plaintiff's still-outstanding conviction. Because of doctrines like independent source and inevitable discovery, … and especially harmless error, … such a § 1983 action, even if successful, would not necessarily imply that the plaintiff's conviction was unlawful. In order to recover compensatory damages, however, the § 1983 plaintiff must prove not only that the search was unlawful, but that it caused him actual, compensable injury, … which, we hold today, does not encompass the "injury" of being convicted and imprisoned (until his conviction has been overturned).

*Id.* at 487 n.7, 114 S. Ct. 2364 (citations omitted) (emphasis in original). Because an illegal search or arrest may be followed by a valid conviction, *see id.*, a successful § 1983 action for Fourth Amendment search and seizure violations does not necessarily imply the invalidity of a conviction. As a result, *Heck* does not generally bar such claims.

*Hughes v. Lott*, 350 F.3d 1157, 1160 (11th Cir. 2003) (footnote omitted).

Here, Smith's § 1983 claims challenge the propriety of how the first, now *nolle-prossed* prosecution was instituted. Even if the first prosecution was found to have been improperly instituted due to the Defendants withholding Officer Wright's change in story, the Defendants have failed to explain how that would "necessarily imply the invalidity of [a] conviction" in Smith's second, ongoing criminal prosecution, and the undersigned is not convinced at this stage that it would.

### f.  Eighth Amendment Claims

Finally, the Defendants argue that, to the extent Smith asserts § 1983 claims under the Eighth Amendment, they should be dismissed because none of his claims challenge either "judicially imposed punishments" or "conditions of confinement." *Ort*

14

*v. White*, 813 F.2d 318, 321 (11th Cir. 1987). While the undersigned agrees that Smith's present complaint fails to state a claim under the Eighth Amendment, given the lenience shown to *pro se* pleadings, *see supra*, the undersigned finds that citation to the Eighth Amendment in the present complaint was, at most, surplusage, and that the more appropriate course would be to strike the references to it under Federal Rule of Civil Procedure 12(f)(1) ("[O]n its own[,]" the "court may strike from a pleading…any redundant, immaterial, impertinent, or scandalous matter.").

### IV.   *Conclusion*

In accordance with the foregoing analysis, the undersigned **RECOMMENDS** that the Defendants' "Motion to Dismiss" filed July 23, 2025 (Doc# 45), be **GRANTED in part** and **DENIED in part**, as follows:

1. Smith's § 1983 claims for monetary damages against the Defendants in their official capacity should be **DISMISSED without prejudice** under Rule 12(b)(1);

2. The motion should be otherwise **DENIED**; and

3. References to the Eighth Amendment in the operative complaint (Doc# 1) should be **STRICKEN** under Rule 12(f).

### NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within 14 days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b);

S.D. Ala. GenLR 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this the **23rd** day of **February 2026**.

/s/ Katherine P. Nelson
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**

16